Thomas L. SUTER

v.

The UNITED STATES.

No. 270–54.

United States Court of Claims.

July 12, 1957.

Guy Emery, Washington, D. C., Ansell & Ansell, Washington, D. C., on the briefs, for plaintiff.

John R. Franklin, Washington, D. C., with whom was George Cochran Doub, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

MADDEN, Judge.

The plaintiff, an Army Reserve Officer, sues for retired pay, claiming that he was totally and permanently disabled for active duty when he was separated from active service on June 9, 1946. The history of his service and of various injuries and hospitalizations are recited in the findings of facts, and most of these events will not be discussed in this opinion.

On November 28, 1945, the plaintiff was admitted to the Walter Reed General Hospital and remained there until March 25, 1946. At the hospital he appeared before a Disposition Board on February 27, 1946. The board, consisting of two colonels and a captain, all medical officers, found that he had defective hearing, that the disability was total and permanent, that the disability was incurred in line of duty, and that the plaintiff was unfit for service. The board recommended that the plaintiff be ordered to appear before an Army Retiring Board.

The plaintiff appeared before an Army Retiring Board on March 22, 1946. Two captains, both medical officers, testified substantially in accord with what the Disposition Board had found, as stated above. The Retiring Board made the following finding:

"The Board is unable at this time to determine the permanency of Major Suter's incapacity, and the Board recommends 6 months' temporary limited service, with re-exam-

ination and revaluation at the end of that time, at a hospital specializing in deafness."

This action of the Retiring Board seems not to have been approved, or otherwise acted upon, by any higher authority. Perhaps this was because of the tentative nature of the board's action.

In the Retiring Board hearing, the plaintiff had stated that if he should be found unfit for general service, he did not desire to remain in the Army on a limited service basis. On March 23, 1946, the day after the hearing, he was ordered relieved from further observation and treatment at the hospital, and transferred to the Separation Center at Fort Meade, Maryland, for separation, not by reason of physical disability. On March 26, he was so separated.

The plaintiff undertook civilian employment, first with a commercial airline in North Africa, and later by setting up his own rare book business in Paris, France. Because of the statement of the Retiring Board quoted above, in reference to hospitalization and observation at the end of six months, the plaintiff obtained admission to a United States Army Hospital in Frankfurt, Germany, in December 1946. His admission was "for final type physical examination," and was stated to be "for the purpose of reporting to the Surgeon General." The plaintiff requested that the report of the examination be sent to the Walter Reed Hospital. The report of the examination at the hospital in Frankfurt must have been lost. At any rate we do not know what it was.

In January 1948, the plaintiff returned to the United States and obtained admission to the Walter Reed Hospital. A staff conference there recommended "a full aural rehabilitation program." About March 8, he was, upon his own request, released from the hospital so that he could return to France. In April 1948, he filed an application for compensation with the Veterans Administration

in Paris, France. On March 17, 1949, the Veterans Administration determined that the plaintiff's deafness was 40 percent disabling, and that a service-connected shoulder injury was 10 percent disabling.

In May 1949, the plaintiff returned to the United States and sought admission to the Walter Reed Hospital. He was advised in writing by the Air Force that he would be so admitted, at his own expense, "for physical evaluation, and appearance before a retiring board, if warranted," and was asked to give written notice if he desired admission on that basis. He gave that notice on May 26, 1949 and said that he would be available until June 30. He received no notice that the hospital was ready to receive him, and apparently made no inquiry as to why he did not receive such a notice. He returned to his business in Europe in the fall of 1949. He advised the Air Force that it had been "impractical" for him to remain longer in the United States.

In 1951 the plaintiff returned to the United States. The Walter Reed Hospital wrote him on April 23 that arrangements had been made for his "admittance to the hospital for observation and necessary treatment, including appearance before a medical board and, if warranted, a Physical Evaluation Board." Some two months later 'the plaintiff reported to the hospital, but was told that the law did not permit consideration of his retirement for physical disability. The basis for this statement was the opinion of the Comptroller General of April 25, 1951, 30 Comp.Gen. 409, in which he held, in effect, that Section 5 of the Act of April 3, 1939 (53 Stat. 555, 557),* under which the plaintiff was and is claiming retirement rights, had been wholly superseded, as of October 1, 1949, by the provisions of Title IV of the Career Compensation Act of 1949 (63 Stat. 802).†

In the case of Updike v. United States, 132 F.Supp. 957, 132 Ct.Cl. 627, this

---

* Now 10 U.S.C.A. §§ 3687, 3688, 3721, 8687, 8688, 8721.

† Now 10 U.S.C.A. § 1201 et seq.

court held that the Comptroller General was mistaken in the opinion cited above. In the Comptroller General's opinion B–121663, September 14, 1956, he expressed agreement with our Updike decision. However, the plaintiff was not, because of the earlier opinion, given a hearing before a Physical Evaluation Board in 1951.

In 1953 the plaintiff applied to the Air Force Board for Correction of Military Records to have his record corrected to show entitlement to retired pay. The Surgeon General of the Air Force sent a memorandum to the board recommending that no correction be made. The memorandum is reproduced in full in our finding number 30. It was not fair to the plaintiff. The statement that the 1946 Retiring Board "was unable to reach a conclusion" should have added that the board's uncertainty was, apparently, only on the question of the permanency of the deafness. The statement that an opportunity for re-evaluation "was subsequently provided, but was incomplete because of Major Suter's other personal requirements" did not take into consideration that the finding of the Frankfurt examination was apparently lost by the Army, that in 1949 the plaintiff came to the United States and waited around for some months awaiting the call to the hospital, which call he had been advised he would receive when his records had been collected, that in 1951 he was first promised and then denied an examination and, if appropriate, an appearence before a Physical Evaluation Board.

The Correction Board denied the plaintiff's application on the ground that "a sufficient basis for review has not been established." We suppose that the Surgeon General's memorandum had much to do with the board's conclusion.

At the plaintiff's appearance before the Retiring Board in 1946, the only evidence produced was to the effect that he was totally and permanently disabled by deafness. Two of the members of the board were medical officers and they,

quite properly, reserved decision as to the permanency of the disability, recommending a later examination to see whether there was recovery, and to what extent. As is shown by our recital of events, that re-examination has never occurred. It was not the plaintiff's fault that it never occurred. When the 1946 Retiring Board recommended six-months limited duty and then a re-examination, which would have meant that the plaintiff would sit around on pay for six months, the plaintiff preferred to get out and get himself a job. A re-examination to find out whether a man is as deaf as he was six months before, and, if not, how much less or more deaf he is, would not seem to present medical problems of a high order of difficulty. If it was necessary for the plaintiff to leave his work in Europe and return to the United States for such an examination, when the Army had many well-equipped hospitals in Europe, it is not strange that the plaintiff, a layman, would not have been aware of that necessity.

After all the occurrences of the intervening years, all that the Government knows about the plaintiff's alleged disability is that in 1946 the medical witnesses testified that he had a total and permanent service-connected disability, that the medical officers on the Retiring Board were in doubt as to its permanence, that he has never since been examined to determine that permanence for retired pay purposes, that in 1952 the Veterans Administration found him to be 100 per cent disabled by deafness, for its purposes.

We think that, in view of the refusal of a hearing in 1951 because of a mistake of law, and the refusal of a hearing in 1954 because of a recommendation of the Surgeon General based upon an unfair and inaccurate recital of the facts, the plaintiff is entitled to relief in this court. We have no power to remand the case, hence we must decide it. Our decision is that the plaintiff, when he was released from the Army in 1946, had a total and permanent service-connected

disability. If the Physical Evaluation Board in 1951, or the Board for the Correction of Military Records in 1954 had so decided, and the decision had been officially approved, the plaintiff would have received his retired pay from the date of his release in 1946. Since his cause of action is based upon the failure of the first of those tribunals to decide his case at all, or upon the failure of the second to decide the case upon the evidence, we must decide the case as we think they should have decided it, and with like effect.

The plaintiff is entitled to a judgment for retired pay from the date of his release from the Army in 1946, less appropriate credit for payments which he has received from the Veterans Administration. The exact amount of the judgment will be determined in further proceedings pursuant to Rule 38(c), 28 U.S.C.

It is so ordered.

JONES, Chief Judge, and WHITAKER and LITTLETON, Judges, concur.

LARAMORE, Judge (dissenting).

I respectfully dissent for the reason I believe plaintiff's claim is barred by the 6-year statute of limitations, 28 U.S.C. § 2501.

Plaintiff was separated from active service on June 9, 1946. He did not apply to the Air Force Board for Correction of Military Records until 1953. We have many times held that his cause of action first accrued when he was released from active duty, and resort to the correction board would not toll the statute of limitations. Levadi v. United States, Ct.Cl., 146 F.Supp. 455; Barker v. United States, 140 F.Supp. 415, 135 Ct.Cl. 42; Rosnick v. United States, 129 F.Supp. 958, 132 F.Supp. 478, 132 Ct.Cl. 1; MacFarlane v. United States, 140 F. Supp. 420, 134 Ct.Cl. 755; Duff v. United States, 135 F.Supp. 527, 133 Ct.Cl. 161.

Plaintiff's petition was filed June 29, 1954, more than six years thereafter.